IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RHJ MEDICAL CENTER, INC., *on its own behalf and on behalf of its patients,* | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:09-131 |
| v. | ) ) ) | JUDGE KIM R. GIBSON |
| CITY OF DUBOIS, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**I.   Synopsis**

Presently before the Court is a motion for attorney's fees (ECF No. 111) filed by Plaintiff RHJ Medical Center, Inc. ("RHJ"). RHJ seeks an award of attorney's fees in the total amount of $454,993.66. Defendant, the City of Dubois ("City"), opposes the motion, asserting that the appropriate award amount is no more than $110,113.50. (ECF No. 116 at 26). For the reasons stated below, RHJ's motion will be granted with modification, and the Court will award attorney's fees to RHJ in the amount of $270,663.90 and costs in the amount of $3,887.16.

**II.   Jurisdiction and Venue**

Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343(a). Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit occurred in this district.

### III. Background

This case stems from a dispute between RHJ and the City regarding the opening of a methadone treatment facility within the boundaries of the City of Dubois, Pennsylvania. RHJ initiated this action by filing a six-count complaint[1] on May 14, 2009, seeking declaratory and injunctive relief against the City and challenging the validity of the City's enactment of Ordinance 1720 and enforcement of 53 P.S. § 10621 ("Section 621"). The Court previously made exhaustive findings of fact and conclusions of law (*see* ECF No. 107) and will only briefly summarize the background of the case here.

In early 2006, RHJ decided to open a methadone treatment facility in the City of DuBois. In March 2006, after investigating various locations, RHJ executed a ten-year lease for a building at 994 Beaver Drive within the City. On May 1, 2006, RHJ took occupancy of the building. RHJ then executed numerous referral agreements with local hospitals and social service agencies and began the process of acquiring proper licensing and certifications from various state agencies.

At some point during this time, RHJ's contentious relationship with the City began. In particular, a conflict arose regarding the applicability of Section 621 of the Pennsylvania Municipalities Planning Code, which prohibited methadone facilities within 500 feet of certain locations—including public parks—without approval from the local

---

[1] The complaint contains the following counts: Count I asserts a violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses for Defendant's actions under Section 621; Count II asserts a claim under the Rehabilitation Act for Defendant's actions under Section 621; Count III asserts a claim under Title II of the ADA for Defendant's actions under Section 621; Count IV asserts a violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses for Defendant's actions under Ordinance 1720; Count V asserts a claim under the Rehabilitation Act for Defendant's actions under Ordinance 1720; Count VI asserts a claim under Title II of the ADA for Defendant's actions under Ordinance 1720. (*See* ECF No. 1).

2

government. At issue was whether the Beaver Meadow Walkway, a walking trail located less than fifty feet away from 994 Beaver Drive, constituted a public park within the meaning of the statute, thus requiring RHJ to receive approval from the City.

RHJ began treating its first patients at the Dubois facility on October 16, 2006. Around this same time, the City sent a letter to RHJ invoking Section 621 and explaining that RHJ's facility was within 50 feet of the Beaver Meadow Walkway, which the City asserted was a public park. The City then filed suit in the Clearfield County Court of Common Pleas, pursuant to Section 621, and the Court entered a preliminary injunction against RHJ on October 27, 2006. Thereafter, RHJ stipulated that the Beaver Meadow Walkway was a public park pursuant to Section 621 and that RHJ was thus required to secure a Certificate of Use from the City to operate the methadone facility on the property. RHJ then began the process of applying for a Certificate of Use from the City, but met significant public opposition. On May 14, 2007, after RHJ filed an application and after the City held a public hearing on the matter, the City denied RHJ's application for a Certificate of Use. However, soon thereafter, the Third Circuit ruled that Section 621 was facially discriminatory under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") in *New Directions Treatment Services v. City of Reading*, 490 F.3d 293 (3d Cir. 2007).

In light of the Third Circuit's decision in *New Directions*, RHJ approached the City in October 2007, again seeking a Certificate of Use for its 994 Beaver Drive facility. RHJ also asked the state court to dissolve the injunction that it had entered in December 2006. However, during the final months of 2007, the City adopted Ordinance 1720, which

modified the City's zoning code and included a provision specifically excluding methadone clinics and other drug treatment facilities from large areas of the City. Nevertheless, RHJ continued to contest the previously imposed injunction, and, on March 6, 2008, Judge Ammerman lifted the December 2006 injunction.

Despite the injunction being lifted, RHJ was unable to operate its facility at 994 Beaver Drive due to the newly passed Ordinance 1720. RHJ then began to explore alternate sites for its methadone clinic, though, as this Court previously concluded, these attempts were deficient. With Ordinance 1720 in place and with RHJ having failed to find a suitable site to relocate the methadone facility, RHJ abandoned its efforts to open the facility in the City of DuBois, terminated its lease at 994 Beaver Drive, and initiated the instant action in this Court.

RHJ filed its complaint on May 14, 2009 (ECF No. 1), and the City filed an answer on June 18, 2009 (ECF No. 5). The City then filed a motion for judgment on the pleadings and a motion for a more definite statement. (ECF Nos. 22, 25). After thorough briefing by the parties, the Court denied both motions in a lengthy opinion. (*See* ECF No. 39). The parties then conducted extensive discovery and filed cross-motions for partial summary judgment (ECF Nos. 56, 62), which the Court denied (ECF No. 83).

This Court then held a six-day bench trial, which began on February 21, 2012, and concluded on March 9, 2012. Following the trial, the parties submitted extensive briefing and lengthy proposed findings of fact and conclusions of law. Thereafter, on August 17, 2012, the Court issued an order—along with findings of fact and conclusions of law—providing, in pertinent part:

1. Pursuant to 42 U.S.C. § 1983, judgment shall be entered in favor of Plaintiff and against Defendant in the amount of $132,801.64 for damages to Plaintiff as a result of Defendant's violation of its equal protection rights.

2. The Court declares Ordinance 1720 unconstitutional under the Equal Protection Clause, same ordinance being null and void and having no effect.

3. Plaintiff is entitled to reasonable attorney's fees as to its equal protection claim related to Ordinance 1720. . . .

4. Judgment shall be entered in favor of Defendant as to all of Plaintiff's remaining claims.

(ECF No. 107). Pursuant to the Court's order, RHJ then filed a motion for attorney's fees (ECF No. 111), along with a brief (ECF No. 112) and supporting exhibits on September 12, 2012. The City filed a response in opposition to RHJ's motion (ECF No. 116) along with supporting exhibits.[2] The attorney's fees motion was then stayed pending RHJ's appeal. On April 24, 2014, the Third Circuit affirmed this Court's judgment (ECF No. 122) and issued a non-published opinion (ECF No. 123). The matter is now ripe for disposition.

## IV. Legal Standard

Congress has statutorily authorized courts to award reasonable attorney's fees in various kinds of civil rights cases. *See Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011). Applicable here, "in any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the

---

[2] The City filed a response (ECF No. 115) to RHJ's motion for attorney's fees on October 3, 2012. Attached to that response was a 53-page document (ECF No. 115-1), which included Exhibits A through J. That same day, the City entered an errata on the docket and refiled its response (ECF No. 116) along with a single attachment, "Corrected Exhibit G." As a result of the errata entry, the original series of exhibits (ECF No. 115-1) was removed from the public view. However, the Court has reviewed these exhibits and notes that the City intended them to be made part of the record.

costs . . ." 42 U.S.C. § 1988. "A reasonable fee is that which is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Fross v. County of Allegheny*, 848 F. Supp. 2d 547, 550 (W.D. Pa. 2012) (citing *Perdue v. Kenny A.*, 559 U.S. 542 (2010)).

The amount of an award for attorney's fees is within the district court's discretion so long as it "employs correct standards and procedures and makes findings of fact not clearly erroneous." *Loughner v. University of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001) (citation omitted). In determining the proper amount of fees to be awarded, a court must evaluate the claimed fees with "scrutiny and close evaluation." *Carpenter Tech. Corp. v. Armco, Inc.*, 808 F. Supp. 408, 410 (E.D. Pa. 1992) (citing *Codex Corp. v. Milgo Electronic Corp.*, 717 F.2d 622 (1st Cir. 1983)). The party seeking attorney's fees bears the burden of proving that its request is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Accordingly, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party opposing the fee request then has the burden to demonstrate the necessity of reducing the fee award. *Rode*, 892 F.2d at 1183.

The starting point in awarding attorney's fees is the lodestar amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Fross*, 848 F. Supp. 2d at 550 (citing *Hensley*, 461 U.S. at 433, and *Perdue*, 559 U.S. 552). The prevailing party bears the burden of showing that the hours and rates charged are reasonable. *Hensley*, 461 U.S. at 429-30 (citing *Rode*, 892 F.2d at

1183). To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 424.

When calculating the number of hours on which to base a fee award, the court should exclude hours that were not reasonably expended on the litigation. *Hensley*, 461 U.S. at 433; *Rode*, 892 F.2d at 1183. Hours are not reasonably expended when they are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 433; *Rode*, 892 F.2d at 1183. In determining whether the moving party has met its burden, the district court must go line by line through the billing records supporting the fee request. *Interfaith Community Organization v. Honeywell International, Inc.*, 426 F.3d 694, 713 (3d Cir. 2005) (citing *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001)).

After determining the number of hours reasonably expended, the court examines whether the requested hourly rate is reasonable. A reasonable hourly rate is determined by looking to the prevailing market rates in the relevant community. *Loughner*, 260 F.3d at 179-80. The relevant community is the forum of the action—here, the Western District of Pennsylvania. *See Interfaith Cmty. Org.*, 426 F.3d at 704-05; *Huber v. Lawruk*, No. 3:07-cv-145, 2010 WL 2104765, at *2 (W.D. Pa. May 25, 2010). Thus, an out of town lawyer would not receive the hourly rate prescribed by his district, but rather the hourly rate prevailing in the forum in which the litigation is lodged. *Volenti v. Allstate Ins. Co.*, 243 F. Supp. 2d 200, 206 (M.D. Pa. 2003) (citing *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185-86 (3d Cir. 1995)). The court should consider the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience,

7

and reputation. *Lohman v. Borough*, No. 3:05-cv-1423, 2008 WL 2951070, *2 (M.D. Pa. July 30, 2008) (citing *Maldonado v. Houston*, 256 F.3d 181, 184 (3d Cir. 2001)).

Upon determining a reasonable hourly rate, the court multiplies that rate by the number of hours reasonably expended. *Rode*, 892 F.2d at 1183. This calculation yields the lodestar, which is presumed to be the reasonable fee. *Id.* "Once the proper lodestar amount has been calculated, the court must then consider other factors, such as the 'results obtained' in fashioning an award of fees that is reasonable and appropriate." *Fross v. Cnty. of Allegheny*, 848 F. Supp. 2d 547, 551 (W.D. Pa. 2012) (citations omitted). Thus, the district court may make adjustments to the lodestar, but the party opposing the fee request bears the burden of demonstrating the necessity of reducing the fee award. *Hensley*, 461 U.S. at 429-30; *Rode*, 892 F.2d at 1183. Once the opposing party has objected to a fee request with sufficient specificity, the party requesting fees must demonstrate that its fee request is reasonable. *Interfaith Cmty. Org.*, 426 F.3d at 713. A district court has discretion to adjust the fee award in light of objections raised by the opposing party, but the court may not decrease a fee award based on considerations not raised by the opposing party. *Id.*; *United States v. Eleven Vehicles*, 200 F.3d 203, 211 (3d Cir. 2000).

When determining the amount of a reasonable fee, the court should exclude the hours spent on any unsuccessful claim on which the plaintiff has failed to prevail if that claim is distinct in all respects from his successful claims. *Hensley*, 461 U.S. at 440. "[W]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* However, "where the plaintiff achieved only limited success,

8

the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.*; *see also Huber v. Lawruk*, No. 3:2007-cv-145, 2010 WL 2104765, at *2 (W.D. Pa. May 25, 2010).

## V. Analysis

Following a six-day bench trial and an entry of judgment in favor of RHJ, this Court determined that an award of attorney's fees was proper as to RHJ's equal protection claim related to Ordinance 1720. (*See* ECF No. 107). The Third Circuit recently affirmed the decision of this Court. *See RHJ Med. Ctr., Inc. v. City of DuBois*, No. 12-3641, 2014 WL 1623052 (3d Cir. Apr. 24, 2014). Thus, RHJ—the prevailing party in the underlying case—is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b).

RHJ requests a total fee award of $454,993.66, while the City contends that the award should not exceed $110,113.50. The parties have fully briefed the issue and have submitted detailed billing reports, along with affidavits and other documentation. The Court must now calculate the appropriate amount of the contested fee award. The Court has carefully reviewed the documents submitted and will apply the lodestar calculation, along with other relevant factors, including whether a downward reduction is proper, to determine an appropriate award amount.

### A. The reasonable hourly rate

To begin, the Court will review the proposed hourly rates, which are not contested. RHJ has met its burden of showing that the requested hourly rates for RHJ's

9

counsel are reasonable. To determine what constitutes a reasonable hourly rate for the relevant community, the Court applies a burden shifting approach. *Carey v. City of Wilkes-Barre*, 496 Fed. App'x 234, 236-37 (3d Cir. 2012). The fee petitioner bears the initial burden of establishing a prima facie case by producing sufficient evidence, including the attorney's own affidavits, of what constitutes a reasonable market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 360-61 (3d Cir. 2001). "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185-86 (3d Cir. 1995). Other relevant evidence "often comes in the form of affidavits from other attorneys." *Carey*, 496 F. App'x at 236.

Two law firms worked together on behalf of RHJ—the Public Interest Law Center of Philadelphia ("Law Center") and McGuireWoods LLP. Attorneys Michael Churchill and Bessie Dewar, both from the Law Center, initially represented RHJ. Following the Law Center's initial work on the case, RHJ was represented by McGuireWoods for the remainder of the litigation. This representation included five attorneys—Leonard J. Marsico, Alyssa Barillari Barnes, Matthew D. Monsour, Brian C. Root, Jamie A. Edwards—and two paralegals—Anne G. Muhl and Melissa S. Liskey.

In addition to its brief and billing documents, RHJ submitted the following exhibits to support its assertion that the fees presented are reasonable:

- Declaration of Jennifer R. Clarke, Esquire, Executive Director of the Public Interest Law Center of Philadelphia (ECF No. 112-1)
- Schedule of Standard Hourly Rates for the Public Interest Law Center of Philadelphia (ECF No. 112-3)
- Resume of Bessie Dewar, Esquire (ECF No. 112-5)
- Affidavit of John E. Quinn, Esquire (ECF No. 112-6)
- Affidavit of Timothy O'Brien, Esquire (ECF No. 112-7)
- Declaration of Witold J. Walczak, Esquire (ECF No. 112-8)
- Declaration of Leonard J. Marisco, Esquire (ECF No. 112-9)

RHJ asserts that the following rates are reasonable:

|  | *Hourly Rate* |
|---|---|
| **Public Interest Law Center** |  |
| Michael Churchill | $ 500 |
| Bessie Dewar | $ 220 |
| **McGuireWoods LLP** |  |
| Leonard J. Marisco | $ 480 |
| Alyssa Barillari Barnes | $ 300 |
| Matthew D. Monsour | $ 240 |
| Brian C. Root | $ 220 |
| Jamie A. Edwards | $ 200 |
| Anne G. Muhl | $ 125 |
| Melissa S. Liskey | $ 105 |

The City does not contest that the hourly rates presented by RHJ's counsel are reasonable. (*See* ECF No. 116 at 7 n.4) ("Defendant will not directly challenge these individual hourly rates beyond what this Court . . . deems appropriate."). Accordingly, having reviewed the affidavits and other submissions by RHJ's counsel, and in light of the prevailing rates in the community for similar services by attorneys of comparable skill,

experience, and reputation, the Court finds that RHJ's proposed hourly rates are reasonable.

B. The number of hours reasonably worked

The Court must now determine the number of hours reasonably worked. RHJ seeks to collect fees for a total of 1,951.7 hours worked by the two law firms representing RHJ on this case. RHJ has submitted an extensive billing summary identifying the hours worked and descriptions of the activities performed. (ECF No. 112-10). RHJ contends that it has reduced its fee request by eliminating "those hours which clearly related to unsuccessful claims." (ECF No. 112 at 10). RHJ explains, for example, that it eliminated hours related to researching the Section 621 argument, hours devoted to researching the arguments related to standing under the ADA and RA, duplicative hours related to attending conferences, and duplicative hours for researching and developing similar issues used in different briefs. (Id.).

On the other hand, the City contends that RHJ has included time entries in its billing summary that were not expended towards the Ordinance 1720 Equal Protection challenge. (ECF No. 116 at 6). Specifically, the City has identified seven categories of billed hours that it claims should be excluded from the lodestar calculation: (1) RHJ's "abandoned request for equitable relief," (2) RHJ's "wholly unsuccessful request for lost profits," (3) RHJ's "unsuccessful claims for violations of the ADA and RA and its unsuccessful claims for violations of substantive due process," (4) RHJ's "voluntary

participation in mediation," (5) clerical matters by paralegals, (6) excessive time, and (7) duplicative and excessive time expended by the Law Center. (*Id.* at 7).

The Court has thoroughly reviewed the billing statement submitted by RHJ and the affidavits and other documents filed in support, and has carefully considered the arguments raised by the City regarding the seven categories of time it asserts are unreasonable and should be excluded from the lodestar calculation. The Court finds that RHJ has met its burden of showing the hours submitted in its billing statement were reasonably expended. *See generally, Carpenter Tech. Corp. v. Armco, Inc.*, 808 F. Supp. 408 (E.D. Pa. 1992) *aff'd*, 993 F.2d 876 (3d Cir. 1993). Based on the record before the Court, the City has not supported its objections to the billing statement with sufficient evidence or specificity to show that the hours submitted were not reasonable. Importantly, as will be discussed in more detail below, the claims raised by RHJ and the relief sought significantly overlap. Thus, it is difficult to segregate from the billing statement those hours that specifically relate to RHJ's unsuccessful claims and requests for relief.

The City also contends that "a careful and generous review of Plaintiff's [billing summary] . . . reveals that a mere $36,202 in fees can be attributed to either Ordinance 1720 or Plaintiff's equal protection claims." (ECF No. 116 at 8). The Court finds this calculation by the City (*see* ECF No. 115-1, Ex. A) clearly inadequate. Thus, despite the City's specific objections to RHJ's request for attorney's fees, the Court finds that the City has not met its burden to rebut the reasonableness of RHJ's presentation of hours worked. Accordingly, for the purpose of calculating the lodestar—which is simply the starting point of the Court's analysis—RHJ's assertion of hours reasonably worked will be used.

C. The lodestar calculation

The Court must now multiply the number of hours reasonably expended by the reasonable hourly rate to determine the lodestar amount. This amount is presumed to be the reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The calculation, based on the billing information provided by RHJ, is as follows:

|  | *Hourly Rate* | *Number of Hours* | *Fee Total* |
|---|---|---|---|
| **Public Interest Law Center** | | | |
| Michael Churchill | $ 500 | 31.00 | $ 15,500.00 |
| Bessie Dewar | $ 220 | 25.20 | $ 5,544.00 |
| **TOTAL:** | | **56.20** | **$21,044.00** |
| **McGuireWoods LLP** | | | |
| Leonard J. Marisco | $ 480 | 39.30 | $ 18,864.00 |
| Alyssa Barillari Barnes | $ 300 | 240.30 | $ 72,090.00 |
| Matthew D. Monsour | $ 240 | 820.90 | $ 197,016.00 |
| Brian C. Root | $ 220 | 470.80 | $ 103,576.00 |
| Jamie A. Edwards | $ 200 | 30.50 | $ 6,100.00 |
| Anne G. Muhl | $ 125 | 78.90 | $ 9,862.50 |
| Melissa S. Liskey | $ 105 | 214.80 | $ 22,554.00 |
| **TOTAL:** | | **1,895.50** | **$ 430,062.50** |

Additionally, McGuireWoods has requested $3,887.16 in litigation costs related to research and similar fees. (*See* ECF No. 112-10 at 48). The City has not raised a specific objection to these litigation costs, and the Court finds that they are reasonable. Thus, the lodestar amount is $451,106.50, which includes attorney's fees for the Law Center in the amount of $21,044.00 and attorney's fees for McGuireWoods in the amount of $430,062.50. Costs for McGuireWoods in the amount of $3,887.16 will be awarded when the final fee plus costs is determined.

### D. Downward adjustment

Having calculated the lodestar amount, the Court must now consider whether any other factors[3] require an adjustment of that amount. *Fross*, 848 F. Supp. 2d at 551 ("Once the proper lodestar amount has been calculated, the court must then consider other factors, such as the 'results obtained' in fashioning an award of fees that is reasonable and appropriate.") (citing *Hensley*, 461 U.S. at 433-34; *Lima v. Newark Police Department*, 658 F.3d 324, 333 (3d Cir. 2011)).

The City advances two reasons why the lodestar should be reduced. First, the City contends that the "lodestar must be reduced to remove [RHJ's] unsuccessful, unrelated claims." (ECF No. 116 at 15). Second, and in the alternative, the City contends that the "lodestar must be reduced to account for [RHJ's] limited success." (*Id.* at 22).

These two issues raised by the City fall squarely within the principles outlined in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). There, the Supreme Court clarified the proper relationship of the results obtained in a case with an award of attorney's fees. *Id.* at 432. In considering "whether a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims," the Court concluded that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 426, 440. Thus, in the instant

---

[3] Among the factors the Court may consider are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

case, this Court must consider whether the requested fee is reasonable in light of the relationship of the claims asserted and the degree of success attained, an inquiry the Supreme Court termed "the important factor of the 'results obtained.'" *Id.* at 434. In evaluating this factor, the Court must address two questions: first, whether RHJ failed to prevail on claims that were unrelated to the claims on which it succeeded; and second, whether RHJ achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Id.* at 434.

RHJ contends that the lodestar should not be reduced because RHJ achieved substantial success on its claims, namely, that it "achieved the 'rare' result of striking down a law under the Equal Protection Clause's rational review." (ECF No. 112 at 12-13). Additionally, RHJ contends that its successful claim was "intertwined" with its unsuccessful claims because all of the claims were aimed at invalidating Ordinance 1720. (*Id.* at 13). Essentially, RHJ challenged two separate pieces of legislation—Section 621 and Ordinance 1720—under three distinct, but similar, legal theories—discrimination under the ADA and RA, the Equal Protection clause, and the Substantive Due Process clause. RHJ argues that its legal theories are significantly interrelated and share a common core of facts. (ECF No. 112 at 11-12). The City, on the other hand, argues that the claims are not factually related and the legal theories are distinct. (ECF No. 116 at 15-18).

Having considered the arguments of both parties, the Court finds that it must "adjust the lodestar amount to arrive at a fee award that is both reasonable and appropriate based on our consideration of the results obtained, and our overall sense of the suit." *Fross*, 848 F. Supp. 2d at 553. The Court finds that a 40% reduction of the

16

lodestar amount would achieve these ends. While RHJ obtained the significant result of having the Court invalidate Ordinance 1720, the overall result of RHJ's suit was somewhat more limited, hence the reason the Court initially narrowed the scope of attorney's fees to those fees related to RHJ's Equal Protection challenge of Ordinance 1720. Overall, however, RHJ was more successful than unsuccessful, and a reduction of less than half of the fees is appropriate.

The City proposes a number of calculations to reduce the lodestar to a reasonable fee award, suggesting that the Court impose either a 75% or 67% reduction. (ECF No. 116 at 21). However, while the Court agrees with the City that RHJ's requested fee amount is more expansive than the Ordinance 1720 Equal Protection claim, a 75% or 67% reduction of the fee amount overcompensates the deficiency of RHJ's fee request. Instead, a 40% reduction is reasonable based on the circumstances of this case and for the reasons explained below.

First, the City argues that RHJ prevailed on only one of the six claims raised in the complaint. However, this rigid argument imposes a much too simplistic view of RHJ's claims in the complaint. While the complaint does allege distinct legal claims in separate counts, many of the counts significantly overlap in terms of the underlying facts and the applicable legal principles such that they cannot be fractionally divided in the manner proposed by the City. *See Hensley*, 461 U.S. at 435, n.11 (rejecting "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" because "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors").

Indeed, the Court, in presenting its conclusions of law following the bench trial, divided the claims into three general categories: RHJ's standing under the ADA and the RA; RHJ's claims pertaining to Section 621; and RHJ's claims pertaining to Ordinance 1720. (ECF No. 107). RHJ only prevailed on its claims pertaining to Ordinance 1720. However, in reviewing the billing statement submitted by RHJ, it appears that many of the hours billed for the claims pertaining to Section 621 also involve Ordinance 1720. Thus, a simplistic, formulaic reduction based on the ratio of successful claims in the complaint is not appropriate. RHJ challenged two pieces of legislation under multiple legal theories, which resulted in this Court invalidating one piece of legislation and awarding damages to RHJ. Thus, a 40% reduction is appropriate based upon the fact that overall the actual success achieved outweighs the lack of success on certain claims.

Next, the City argues that RHJ achieved only limited success. Specifically, the City compares "the damages demanded to the damages obtained" and notes that the damages awarded by the Court represent only 4.9% of the amount claimed by RHJ at trial. (ECF No. 116 at 24-25). Nevertheless, the fact that RHJ recovered only a small percentage of its claimed damages because it failed to mitigate its loss does not diminish the significant success of RHJ in having Ordinance 1720 invalidated. As the Supreme Court noted in *Hensley*, it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." 461 U.S. at 435, n.11.

18

In sum, the Court finds that a 40% reduction of the lodestar amount is reasonable in light of the degree of success obtained. *See Hensley*, 461 U.S. 424, 436 (explaining "[t]here is no precise rule or formula for making these determinations" and that the district court has broad discretion in making this equitable judgment based on various relevant considerations). The Court makes this determination mindful that this highly contested case generated a lengthy procedural history involving significant claims and culminating in a six-day bench trial. The Court's fee award calculation is based on a careful review of the case law and statutory authority, the facts underlying this case, the protracted procedural history, and the billing records and arguments submitted by the parties. In light of the foregoing reasons, and after applying a 40% reduction to the lodestar amount, the Court finds that a reasonable fee in the amount of $270,663.90 should be awarded to RHJ. This amount is based on various factors—including the lodestar calculation and RHJ's degree of success—and fulfills the purpose of the applicable fee shifting statute to ensure "effective access to judicial process." *Hensley*, 461 U.S. 424, 429; 42 U.S.C. § 1988(b); *see also Perdue v. Kenny*, 130 S.Ct. 1662; *McKenna*, 582 F.3d 447.

## VI. Conclusion

For the reasons stated above, RHJ's motion for attorney's fees (ECF No. 111) is granted with modification. RHJ is awarded attorney's fees in the amount of $270,663.90 and costs in the amount of $3,887.16.

An appropriate order follows.

19

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RHJ MEDICAL CENTER, INC., *on its own behalf and on behalf of its patients*, ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO. 3:09-131 |
| v. ) ) | JUDGE KIM R. GIBSON |
| CITY OF DUBOIS, ) ) | |
| Defendant. ) | |

## ORDER

AND NOW this 8th of August 2014, upon consideration of Plaintiff RHJ Medical Center, Inc.'s motion for attorney's fees (ECF No. 111), and for the reasons stated in the foregoing memorandum, **IT IS HEREBY ORDERED** that Plaintiff's motion is **GRANTED** with modification. Plaintiff RHJ Medical Center, Inc. is awarded $270,663.90 in attorney's fees and $3,887.16 in costs.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE